UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Uriel Anderson,                    :
          Plaintiff,               :
                                   :
     v.                            :     File No. 1:06-CV-144
                                   :
Corrections Corporation of         :
America, Warden Mills,             :
Assistant Warden Hensley,          :
Chief of Security Polk,            :
Captain Walton, Captain            :
Woodland, Captain Woods,           :
Lieutenant Anderson,               :
Captain Brooks, Unit               :
Manager James Severs,              :
Sergeant Bullock, Sergeant         :
Hawkings, Steven Gold and          :
Raymond Flum,                      :
          Defendants.              :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 23 and 24)

Plaintiff Uriel Anderson, a Vermont inmate proceeding *pro se*, brings this action claiming unconstitutional treatment while in prison.  Currently pending before the Court are Anderson's motion to change venue (Paper 23) and the defendants' motion to dismiss (Paper 24).  For the reasons set forth below, I recommend that Anderson's motion to change venue be GRANTED, that the defendants' motion to dismiss be GRANTED in part and DENIED in part, and that this case be TRANSFERRED to the United States District Court for the Western District of

Tennessee.

<u>Factual Background</u>

For purposes of the pending motions, the allegations in Anderson's complaint will be accepted as true.  During the period of time in question, Anderson was a prisoner in the custody and control of the Vermont Department of Corrections ("DOC"), incarcerated in a facility in Mason, Tennessee.  On or about March 19, 2006, Anderson informed the warden, defendant Warden Mills, that no air or heat was circulating in the cells.  Anderson claims that he told Mills "that if he did not correct the problem that [Anderson] was going to make him."  (Paper 4-1, Complaint, at 5).  Warden Mills allegedly replied: "'Do what you want, we got something for that.'"  <u>Id.</u>

That same day, Anderson was stripped of his property, including his shoes, socks and bedding, after allegedly breaking his cell window.  A disciplinary report was issued, and Anderson was "put on styrofoam trays."  During the next seven days, two more windows and Anderson's light were "discovered broken."  <u>Id.</u>

A disciplinary hearing was held, but Anderson was not allowed to attend due to his disruptive behavior.  He

2

was convicted "on all 6 offenses," and filed a disciplinary appeal.  Id. at 6.  He received the decision on his appeal on April 19, 2006.  The decision allegedly failed to "acknowledge his central claim that of being denied the right to be heard" and limited the number of "existing claims the plaintiff can bring to [the warden's] attention."  Id.

Anderson subsequently filed a second appeal, submitted grievances for the return of his property, and filed sick call slips due to the discomfort created by sleeping with no mattress or bedding.  On May 11, 2006, having still not received his property, Anderson refused to leave the shower until his property was returned. Defendant Captain Brooks proceeded to mace him, and two disciplinary reports were issued.  Nonetheless, Anderson remained in the shower through the night and into the next day, without medical attention.

Anderson now brings this action claiming cruel and unusual punishment in violation of the Eighth Amendment. He also alleges that he was punished without due process. For relief, he seeks a declaratory judgment, injunctive relief and monetary damages.  The defendants report that

3

Anderson is no longer incarcerated in Tennessee.

<u>Discussion</u>

I.   <u>Motion to Dismiss - Defendants Gold and Flum</u>

     The defendants have moved for the dismissal of the
sole Vermont defendants, former DOC Commissioner Steven
Gold and DOC employee Raymond Flum.  On a motion to
dismiss, "a court has to consider the legal sufficiency
of the claim as stated in the complaint and is not to
weigh facts underlying the claim or the merits of the
case."  <u>Esden v. Bank of Boston</u>, 5 F. Supp. 2d 214, 216
(D. Vt. 1998) (citing <u>Goldman v. Belden</u>, 754 F.2d 1059,
1067 (2d Cir.1985)).  "In ruling on such a motion, the
court must look only to the allegations in the complaint
and any documents attached to or incorporated by
reference in the complaint."  <u>Dangler v. New York City
Off Track Betting Corp.</u>, 193 F.3d 130, 138 (2d Cir.
1999).  Moreover, the court must assume all well-pleaded
factual allegations to be true and draw reasonable
inferences in the light most favorable to the plaintiff.
<u>See</u> <u>Shakur v. Selsky</u>, 391 F.3d 106, 112 (2d Cir. 2004);
<u>Bernheim v. Litt</u>, 79 F.3d 318, 321 (2d Cir. 1996).
Dismissal is impermissible unless "it appears beyond

4

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Flores v. S. Peru Copper Corp., 343 F.3d 140, 148 (2d Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

A.   Official Capacity Claims

The defendants first argue that Gold and Flum are immune from money damages in their individual capacities.[1]  Under the doctrine of sovereign immunity, the Eleventh Amendment to the United States Constitution bars suits by private citizens against a state or its agencies in federal court unless the state has waived its immunity or Congress has properly abrogated that immunity.  See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984); Seminole Tribe v. Florida, 517 U.S. 44, 55 (1996).  The protection of the Eleventh Amendment also extends to suits for monetary damages against state officers sued in their official capacities.  See Brandon v. Holt, 469 U.S. 464, 471 (1985).  Moreover, the Supreme Court has held that, just as states and state agencies are not "persons" under §

---

[1]  Anderson is not seeking injunctive relief from either of these defendants.  (Paper 4-1 at 14).

1983, state officers acting in their official capacities are not "persons" within the meaning of the statute since they assume the identity of the government that employs them.  See Hafer v. Melo, 502 U.S. 21, 27 (1991).

With respect to this case, it is clear that neither Vermont nor Congress has waived the sovereign immunity that protects Gold and Flum from a damages action brought against them in their official capacities.  There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 67 (1989). It is equally clear that Vermont has not waived its sovereign immunity under § 1983.  See 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not explicitly waived). Therefore, the claims against Gold and Flum in their official capacities should be DISMISSED.

B.  Individual Capacity Claims

The defendants next argue that Gold and Flum are

entitled to dismissal because Anderson has not alleged
that they were personally involved in any wrongful
conduct.  "It is well settled in this Circuit that
personal involvement of a defendant in alleged
constitutional deprivations is a prerequisite to an award
of damages under § 1983." Wright v. Smith, 21 F.3d 496,
501 (2d Cir. 1994).  While "*respondeat superior* cannot
form the basis for a § 1983 claim," Hemmings v. Gorczyk,
134 F.3d 104, 108 (2d Cir. 1998), the personal
involvement of a supervisory defendant in a § 1983 claim
may be shown by evidence that: (1) the defendant
participated directly in the alleged constitutional
violation, (2) the defendant, after being informed of the
violation through a report or appeal, failed to remedy
the wrong, (3) the defendant created a policy or custom
under which unconstitutional practices occurred, or
allowed the continuance of such a policy or custom, (4)
the defendant was grossly negligent in supervising
subordinates who committed the wrongful acts, or (5) the
defendant exhibited deliberate indifference to the rights
of inmates by failing to act on information indicating
that unconstitutional acts were occurring.  See Hernandez

7

v. Keane, 341 F.3d 137, 144 (2d Cir. 2003); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

In the factual portion of his complaint, Anderson describes the allegedly unconstitutional conduct without mentioning either Gold or Flum.  When setting forth his legal claims, Anderson alleges only that Flum "is the contract coordinator [with defendant Corrections Corporation of America ("CCA")].  As the contract coordinator or supervisor he should have been aware of this lack of policy concerning strip cell status procedures."  (Paper 4-1 at 14).  He further speculates that Flum "must have approved the current policy to be implemented."  Id.

With respect to Gold, Anderson submits a one-sentence, conclusory claim of deliberate indifference.  His claims against Robert Hofmann, the DOC Commissioner who replaced Gold, are that Hofmann "is responsible for assuring that the contracts and policies that he engages in do not in itself cause [sic] rise to be implemented."  Also, as in the claim against Flum, Anderson alleges that Hofmann is liable because he "signed the contract" between DOC and CCA.  Id.

Significantly, Anderson fails to claim that any of the Vermont defendants had notice of the alleged misconduct prior to this lawsuit.  Although Anderson complains that CCA has a strip cell status policy, he does not claim that Flum, Gold or Hofmann were on notice that such a policy would lead to unconstitutional conduct.  Nor does he allege that the Vermont defendants were aware of his personal situation, or that they created the allegedly harmful policy.  Absent any involvement in the specific harm or the creation of a policy or practice that led to such harm, the Vermont defendants cannot be held liable as supervisors under § 1983.  <u>Hernandez</u>, 341 F.3d at 144.  The claims against Gold and Flum (and, to the extent that he may be deemed a defendant, Hofmann) in their individual capacities should be DISMISSED.

II.  <u>Venue</u>

The parties agree that this case was filed in the wrong forum.  Anderson has moved for a change of venue. The defendants argue that while a transfer may be warranted, dismissal without prejudice is more appropriate.  The defendants have filed their motion

under 28 U.S.C. § 1406(a), which allows for either

dismissal or a transfer if a transfer would serve "the

interests of justice."  28 U.S.C. § 1406(a).

The Court must first determine if the parties have

correctly determined that venue in Vermont is improper.

The requirement of proper venue "serves the purpose of

protecting a defendant from the inconvenience of having

to defend an action in a trial that is either remote from

the defendant's residence or from the place where the

acts underlying the controversy occurred."  Leon C.

Baker, P.C. v. Bennett, 942 F. Supp. 171, 175 (S.D.N.Y.

1996).  In cases involving questions of federal law, such

as civil rights claims under § 1983, venue lies in

> (1) a judicial district where any defendant
> resides, if all defendants reside in the same
> state, (2) a judicial district in which a
> substantial part of the events or omissions
> giving rise to the claim occurred or a
> substantial part of property that is the subject
> of the action is situated, or (3) a judicial
> district in which any defendant may be found, if
> there is no district in which the action may
> otherwise be brought.

28 U.S.C. § 1391(b); see also Amaker v. Haponik, 198

F.R.D. 386, 391 (S.D.N.Y. 2000).  Subsection (1) of §

1391(b) does not apply here, since the original

defendants did not all reside in the same district.

10

Subsection (2) determines venue based upon where "a substantial part of the events or omissions giving rise to the events occurred . . . ." 28 U.S.C. § 1391(b). The Second Circuit has instructed lower courts to "take seriously the adjective 'substantial'" in construing "the venue statute strictly." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005).

In this case, it is undisputed that the principal allegations of misconduct center on the correctional facility in Tennessee. Consequently, under subsection two of § 1391(b), the "substantial part of the events" took place in Tennessee and venue is most appropriate there. See Sadler v. Rowland, 2004 WL 2061127, at *5 (D. Conn. Sept. 13, 2004) (action brought by Connecticut prisoner against prison personnel in Virginia transferred to Virginia). Because this action could have been brought in Tennessee, subsection (3) of § 1391(b) is inapplicable. See Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3802.1 n. 26 (Supp. 2003) (citing F.S. Photo, Inc. v. Picturevision, Inc., 48 F. Supp. 2d 442, 448 (Del. D.C. 1999)).

Having determined that venue is most appropriate in

11

Tennessee, the Court must decide whether dismissal or
transfer is the most appropriate course of action.
"Courts enjoy considerable discretion in deciding whether
to transfer a case in the interest of justice." <u>Daniel
v. American Bd. of Emergency Medicine</u>, 428 F.3d 408, 435
(2d Cir. 2005) (citation omitted).  "A 'compelling
reason' for a transfer is generally acknowledged when a
plaintiff's case, if dismissed, would be time-barred on
re-filing in the proper forum." <u>Id.</u> (quoting <u>Phillips v.
Seiter</u>, 173 F.3d 609, 610 (7th Cir. 1999)).

     Here, the defendants concede that "Plaintiff's 1983
claims are generally subject to a one-year statute of
limitations in Tennessee." (Paper 24 at 23 n.18 (citing
Tennessee law)).  Although at the time the defendants
filed their motion the one-year period had not yet
lapsed, that is no longer the case.  The pivotal events
in this case began on March 19, 2005 – just over one year
ago – and continued through April and May, 2005.
Consequently, if this Court were to dismiss the remaining
claims without prejudice and force Anderson to re-file
from his current location, he might lose the right to
seek relief on some of his most serious claims.

12

Accordingly, I recommend that the case be TRANSFERRED to the United States District Court for the Western District of Tennessee.

Conclusion

For the reasons set forth above, I recommend that Anderson's motion for a change of venue (Paper 23) be GRANTED, and that the defendants' motion to dismiss (Paper 24) be GRANTED in part and DENIED in part. I recommend that the claims against defendants Gold and Flum be DISMISSED, and that the remainder of the case be transferred to the United States District Court for the Western District of Tennessee.

Dated at Burlington, in the District of Vermont, this 2nd day of April, 2007.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).